**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SONOMA FILMS LLC**, <br><br>　　2137 Curtis Drive <br>　　Penngrove, CA 94951 <br><br>　　　　Plaintiff, <br><br>v. <br><br>**CENTRAL INTELLIGENCE AGENCY**, <br><br>　　1000 Colonial Farm Road <br>　　McLean, VA 22101 <br><br>　　　　Defendant. | Case No. 1:22-cv-3421 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

　　Plaintiff Sonoma Films LLC ("Sonoma") brings this suit against Defendant the Central Intelligence Agency ("CIA"). In support thereof, Sonoma states as follows:

**INTRODUCTION**

　　1.　　This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended by the Nazi War Crimes Disclosure Act ("Disclosure Act"), Pub. L. No. 105-246, 112 Stat. 1859 (1998) (codified as amended at 5 U.S.C. § 552 note), for declaratory, injunctive, and other appropriate relief.

　　2.　　Through FOIA, as amended by the Disclosure Act, Sonoma seeks the production of records concerning Ante Pavelic ("Pavelic") and Father Krunoslav Draganovic ("Draganovic") and their involvement in operations conducted at the behest of the U.S. government during the post-World War II and Cold War eras.

　　3.　　During World War II, Pavelic served as the "Poglavnik" – the Croatian equivalent of "Fuhrer" – of the Ustashe, the Croatian Catholic military government, which allied itself with

Nazi Germany and expelled, forcibly converted, imprisoned, and exterminated hundreds of thousands of non-Catholics, mostly of Jewish and/or Serbian heritage.[1] This policy of 'ethnic cleansing' was based in part on Draganovic's writings concerning the treatment of Catholics by the Ottomans in past centuries.[2]

4. Draganovic himself served as a Ustashe lieutenant colonel during World War II and later became the Vice Chief of the Ustashe's Bureau of Colonization, which was primarily responsible for the redistribution of property taken from dead or deported Serbs.[3]

5. According to publicly available records declassified pursuant to the Disclosure Act, Pavelic and Draganovic were both allegedly employed by U.S. intelligence services after World War II to lead espionage groups based in Italy and Austria.[4]

6. In response to Sonoma's FOIA request for records concerning Pavelic and Draganovic, the CIA produced a limited number of redacted or partial documents, many of which had already been made public prior to Sonoma's request.

7. Sonoma appealed the CIA's response to its request nearly two years ago.

8. To date, the CIA has not provided any substantive response to Sonoma's appeal.

9. FOIA, as amended by the Disclosure Act, mandates the release of the requested records, which constitute "Nazi war criminal records" under the Disclosure Act, in their entirety.

10. Releasing the requested records will greatly inform the public about "what their

---

[1] *See Jasenovac*, U.S. Holocaust Memorial Museum, https://encyclopedia.ushmm.org/content/en/article/jasenovac (last visited Nov. 1, 2022).

[2] *See* Richard Breitman, et al., *U.S Intelligence and the Nazis* 211 (2005).

[3] *Id*.

[4] *See* https://www.cia.gov/readingroom/document/519a6b2a993294098d511700.

government [was] up to," *Department of Justice v. Reporters Committee for Freedom of Press,* 489 U.S. 749, 773 (1989), during one of the most consequential and well-documented periods in world history.

11. The CIA has improperly withheld nearly all of the records responsive to Sonoma's request. Sonoma now brings this lawsuit to compel the CIA to satisfy its obligations under FOIA, as amended by the Disclosure Act, and release all of its responsive records relating to Pavelic and Draganovic.

## **PARTIES**

12. Plaintiff, Sonoma, is a documentary production company founded and run by David Schneider. Mr. Schneider is a journalist, television news producer, and documentary filmmaker with more than four decades of experience. For 29 years, Mr. Schneider reported stories from around the world for *60 Minutes*, *48 Hours*, *CBS Reports* and the *CBS Evening News*. He also served as the Head of Documentaries at Lucasfilm for 7 years, where he created and managed a unit that produced 100 non-fiction historical films. Mr. Schneider has received numerous accolades for his work as a journalist and documentarian, including the Columbia-DuPont Silver Baton, six Emmys, and a Peabody. He is also a member of the board of directors of Investigative Studios, a non-profit production company dedicated to supporting documentary films, multimedia projects, and journalism in the public interest.

13. Defendant, the CIA, is an agency within the meaning of 5 U.S.C. § 552(f)(1). The CIA has possession and control of records requested by Sonoma.

## **JURISDICTION AND VENUE**

14. This action arises under FOIA, as amended by the Disclosure Act. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to

5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15. Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

16. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii), 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

17. Sonoma has exhausted all administrative remedies with respect to its FOIA request.

## FACTUAL ALLEGATIONS

**Enactment of the Nazi War Crimes Disclosure Act**

18. In 1998, Congress enacted the Disclosure Act, which amended FOIA and requires federal agencies to "locate, identify, inventory, recommend for declassification, and make available to the public at the National Archives and Records Administration" any remaining classified records concerning war crimes committed by Nazi Germany and its allies.  Pub. L. No. 105-246, § 2(c)(1).

19. United States Representative Carolyn Maloney introduced H.R. 1281, the bill that would later become the Disclosure Act, to close "a tremendous loophole in the FOIA" allowing "[g]overnment agencies to block the release of information for a variety of reasons, including outdated 'national security' arguments no longer valid in the post Cold War era."  *See* H.R. Rep No. 104-819 Part 1, at Section III (1996).  In determining whether to recommend passage of H.R. 1281, the House Government Reform and Oversight Committee recognized that disclosure of certain responsive information may harm U.S. interests, but it concluded that, "more than half a century after the Second World War, it is time to end the near blanket exemption of Nazi war crimes information from FOIA requests."  *Id*. at Section I.

20. In striking a balance between these concerns, the Disclosure Act directs federal agencies, including the CIA, to disclose information concerning individuals for whom there exists reasonable grounds to believe they participated in the execution of Nazi war crimes "if its disclosure would not threaten (1) national security or foreign relations interests, (2) the investigation or prosecution of such individuals by the Department of Justice, (3) the safety of a confidential informant to the United States government, or (4) the identify of an intelligence agent who currently requires protection." *Id*. at Section VII.

21. The Disclosure Act specifically defines the phrase "Nazi war criminal records" to mean any "classified records or portions of records that . . . pertain to any person with respect to whom the United States Government, in its sole discretion, has grounds to believe ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion, during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with" the Nazi government of Germany or any government cooperating with, occupied by, or established with the assistance or cooperation of the Nazi government. *Id*. § (3)(a).

22. The Disclosure Act mandates that "Nazi war criminal records" shall be "release[d] in their entirety." *Id*. § (3)(b)(1). In general, there is "a presumption that the public interest in the release of Nazi war criminal records will be served by disclosure and release of the records." *Id*. § 3(b)(3)(A). However, the Disclosure Act also identifies information that may be exempt from release, noting that "[t]he exemptions set forth in paragraph (2) shall constitute *the only authority* pursuant to which an agency head may exempt records otherwise subject to release under" the Disclosure Act. *Id*. (emphasis added). Accordingly, records covered by the

Disclosure Act are subject only to the exemptions identified in Section (3)(b)(2) and shall not be withheld based on the application of any other FOIA exemption(s).

23. The Disclosure Act directed the President to establish the "Nazi War Criminal Records Interagency Working Group" ("Interagency Group"), *id*. § 2(b)(1), a group tasked with coordinating agencies' efforts to fulfill the Disclosure Act's mandate. *See* Nazi War Crimes & Japanese Imperial Government Records Interagency Working Group, Final Report to the United States Congress 1 (April 2007) ("Interagency Report"). These efforts led to the declassification and public release of over 8.5 million pages of World War II and post-war records. *Id*. at 2.

24. After the enactment of the Disclosure Act, the CIA initially disclosed records "only if they contained either direct information about war crimes or information suggesting that there were grounds to believe that the subject was involved in war crimes, acts of persecution, or looting." *Id*. at 47. That approach led to the declassification and release of approximately 50,000 pages of documents, many of which were redacted. *Id.* at 49.

25. In 2005, the CIA adopted the Interagency Group's broader interpretation of the Disclosure Act and (1) "[d]eclassif[ied] and release[d] information on individuals connected to the Nazis whether war criminals or not"; (2) "[d]eclassif[ied] and release[d] operational project files where Nazis were involved"; and (3) "[u]ndert[ook] additional searches that the [Interagency Group] historians or CIA thought necessary." *Id*. at 50.

26. As a result of these steps, the CIA narrowed redactions in 47,400 pages of the previously released documents and released over 65,000 new pages. *Id.*

27. Among the records released by the CIA under the Disclosure Act are a substantial number concerning Pavelic and Draganovic, which have been declassified and made available to the public via the CIA website and the National Archives, and which are stamped accordingly.

**Sonoma's FOIA Request and the CIA's Response**

28. On July 24, 2019, Sonoma submitted a FOIA request (the "Request") to the CIA seeking records concerning "the Italo-American Trading Company, in particular any information on Pavelic and/or Draganovic and their involvement in operations conducted at the behest of the U.S. government during the Post World War II era and Cold War." A true and correct copy of the Request is included in the CIA's acknowledgment letter, which is attached hereto as Exhibit A.

29. On July 30, 2019, the CIA acknowledged receipt of the Request and assigned it reference number F-2019-00700. A true and correct copy of the CIA's acknowledgment letter concerning the Request is attached hereto as Exhibit A.

30. On October 20, 2020, Mark Lilly, an Information and Privacy Coordinator at the CIA, responded on behalf of the CIA and produced a one-page document in its entirety as well as seven partially redacted documents (the "Produced Documents"), citing FOIA Exemptions 1, 3, and 6 as the bases for withholding the redacted information. A true and correct copy of the CIA's response is attached hereto as Exhibit B.

31. These withholdings are improper because, *inter alia*, seven of the Produced Documents were declassified between 2001 and 2008 under the terms of the Disclosure Act and are already publicly available at the CIA FOIA Library website.[5] For instance, the one-page document that was produced in its entirety is actually the second page of a two-page document publicly available online.[6] True and correct copies of the seven Produced Documents in question have been attached hereto as Exhibits C through I, while true and correct copies of the previously

---

[5]*See* https://www.cia.gov/readingroom/.

[6]*See* https://www.cia.gov/readingroom/document/519a6b2a993294098d5116e5.

7

declassified and publicly available versions of these seven documents have been attached hereto as Exhibits J through P.

32. Further, some of the information redacted from these seven Produced Documents is visible in the online copies of these same documents, and, conversely, some of the online copies redact information that is visible in the Produced Documents. *Compare* Exs. C-I *with* Exs. J-P.

33. In addition to the seven Produced Documents addressed above, the CIA's response also included one Produced Document, dated April 16, 1959, which does not visibly show the name of either Pavelic or Draganovic and does not appear to be featured on the CIA FOIA Library website. A true and correct copy of this Produced Document is attached hereto as Exhibit Q.

34. The CIA further acknowledged that "additional material was determined to be currently and properly classified and must be denied in its entirety on the basis of FOIA exemptions (b)(1) and (b)(3)." *See* Ex. B at 1.

**Sonoma's Administrative Appeal**

35. On December 18, 2020, Sonoma submitted a letter (the "Appeal") to the CIA appealing the CIA's response. A true and correct copy of the Appeal is attached hereto as Exhibit R.

36. On January 5, 2021, the CIA acknowledged receipt of the Appeal. A true and correct copy of the CIA's acknowledgment letter is attached hereto as Exhibit S.

37. On May 5, 2022, more than one year after receiving no further response from the CIA regarding the Appeal, Sonoma submitted a letter to the CIA requesting "an estimated date

on which the agency will complete action on the [Appeal]." A true and correct copy of Sonoma's letter requesting an estimated decision date is attached hereto as Exhibit T.

38. On August 29, 2022, counsel for Sonoma submitted a letter to the CIA seeking further information about the Appeal. A true and correct copy of this letter is attached hereto as Exhibit U.

39. To date, the CIA has not communicated to Sonoma a determination in its Appeal.

40. To date, the CIA has not acknowledged or responded to Sonoma's May 5, 2022 letter.

41. To date, the CIA has not provided any further updates or corresponded with Sonoma concerning the Appeal.

## CLAIMS FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial in Violation of FOIA, 5 U.S.C. § 552

42. Sonoma realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

43. FOIA provides this Court with "jurisdiction to enjoin [the CIA] from withholding agency records and to order the production of any agency records improperly withheld from [Sonoma]." 5 U.S.C. § 552(a)(4)(B).

44. The records Sonoma seeks are agency records within the CIA's control.

45. FOIA requires an agency to make a determination with respect to any appeal within twenty working days after the receipt of such appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

46. The CIA received Sonoma's appeal on January 5, 2021. Ex. R.

47. Pursuant to FOIA, the CIA was required to respond to Sonoma's appeal by February 4, 2021. 5 U.S.C. § 552(a)(6)(A)(i).

9

48. To date, however, the CIA has not made and communicated to Sonoma a "determination" on its appeal within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

49. There is no basis under FOIA, as amended by the Disclosure Act, to withhold, in whole or in part, the records requested by Sonoma. The CIA has wrongfully withheld agency records in violation of FOIA, as amended by the Disclosure Act.

50. Sonoma requests a declaratory judgment that the CIA has violated FOIA, as amended by the Disclosure Act, and that Sonoma is entitled to immediately receive the requested records.

51. Sonoma further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing the CIA to produce the requested agency records in full and setting a deadline for compliance.

## **REQUEST FOR RELIEF**

WHEREFORE, Sonoma respectfully requests that this Court:

A. Declare the CIA's failure to provide responsive records unlawful under FOIA, as amended by the Disclosure Act;

B. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing the CIA to make the requested records available to Sonoma, unredacted, and without further delay, and setting a deadline for compliance;

C. Provide for expeditious proceedings in this action;

D. Award Sonoma its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such other and further relief as the Court may deem just and proper.

Dated: November 8, 2022                    Respectfully submitted,

                                              BALLARD SPAHR LLP

                                              /s/ *Maxwell S. Mishkin*
                                              Maxwell S. Mishkin (#1031356)
                                              1909 K Street NW, 12th Floor
                                              Washington, DC 20006-1157
                                              Tel: (202) 508-1140
                                              Fax: (202) 661-2299
                                              mishkinm@ballardspahr.com

                                              *Counsel for Plaintiff Sonoma Films LLC*